# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ANNETTE CASULL,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO: 16-1620 (MEL)

**OPINION AND ORDER**

Pending before the court is Annette Casull's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff—who applied for disability alleging "asthma, diabetes, High Blood Pressure, and a cerebral condition"—contends that the administrative law judge's decision was unreasonable when holding that Plaintiff did not have a "severe" impairment. ECF No. 26, at 3, 6.[1]

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

On October 4, 2012, Plaintiff filed an application for Social Security benefits alleging that on December 31, 2007, (or "the onset date"), she became unable to work due to disability. Tr. 40–43.[2] The claim was denied initially on February 4, 2013, and upon reconsideration on September 24, 2013. Tr. 54–59. Thereafter, Plaintiff requested a hearing, which was held on November 19,

---

[1] In Plaintiff's memorandum of law, Plaintiff referred to one of her impairments as a "cerebral condition." ECF No. 26, at 3. While this language is vague, later in Plaintiff's memorandum of law, Plaintiff refers to two pieces of evidence which mention that she had "hydrocephalus." ECF No. 26, at 4. Furthermore, the "disability determination explanation claimant information" form listed the impairments as "Post traumatic Hydrocephallus, Asthma, Diabetes, and High Blood Pressure." Tr. 96. Plaintiff's "request for review of hearing decision/order" form also contains the term "hydrocephallus" as an impairment and also "headaches." Tr. 6. Thus, the "cerebral condition" is most likely referring to hydrocephalus and possibly to headaches.

[2] "Tr." refers to the transcript of the record of proceedings.

2014, before Administrative Law Judge Richard Ortiz Valero (hereafter "the ALJ"). Tr. 123–25; 22–29. On December 8, 2014, the ALJ issued a written decision finding that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from December 31, 2007, the alleged onset date, through December 31, 2012, the date last insured." Tr. 17. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 6. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1–3. Plaintiff filed a complaint on April 4, 2016. ECF No. 2. Plaintiff filed an amended complaint seeking review of the Commissioner's findings on June 6, 2016. ECF Nos. 11; 12. Both parties have filed supporting memoranda. ECF Nos. 26; 28.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social

Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity (or "RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past

relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's residual functional capacity, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, December 31, 2007, through her date last insured, December 31, 2012. Tr. 15. While the ALJ stated that Plaintiff applied for disability benefits due to post-traumatic hydrocephalus, asthma, diabetes, and high blood pressure, the ALJ determined that the Plaintiff had only the following medically determinable impairments: hypertension and diabetes mellitus.[3] Tr. 15–16. Moreover, at step two, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] did not have a severe impairment or combination of impairments." Id. In reaching his decision, the ALJ determined that almost all of the evidence in the file was outside the relevant time period (12/31/07 – 12/31/12) except for pages two and three of exhibit 6F. Tr. 17. The ALJ's analysis of the medical records was limited but added that "[a]t most, [the] evidence shows notations for high blood pressure and diabetes." Id.

The ALJ gave significant weight to the medical expert called by the Social Security Administration at the hearing, Dr. Javier Anaya. Tr. 17. Dr. Anaya's testimony that there were no severe impairments during the period of coverage was given great weight because Dr. Anaya

---

[3] The ALJ also noted that Plaintiff, both on reconsideration and at the hearing, "additionally alleged suffering headaches and chronic fatigue." Tr. 16.

is a specialist, he had the opportunity to examine all the record evidence, and his opinion was consistent with other substantive medical evidence in the record. Id. Additionally, the ALJ gave substantial weight to the analysis of the state agency medical consultants, Dr. Pedro Nieves and Dr. Ulises Meléndez. Id. Dr. Nieves and Dr. Meléndez both found that Plaintiff's medically determinable impairments or combination of impairments were not severe. Id. Both doctors' opinions were given great weight because "they are experts in the evaluation of medical issues in disability claims under the Social Security Act" and their opinions were consistent with the medical evidence in the record and the medical expert's testimony. Id.

Thus, the ALJ concluded that none of Plaintiff's "allegedly disabling impairments imposed more than a significant limitation on [Plaintiff's] ability to perform basic work activities" during the relevant period. Id. Therefore, the ALJ found that the alleged disabling impairments were not severe and thus Plaintiff was not disabled, as defined by the Social Security Act, at any time between the alleged onset date, December 31, 2007, and the date last insured, December 31, 2012. Id.

## IV. ANALYSIS

Plaintiff challenged the ALJ's decision in regards to step two of the sequential process and argued that the ALJ should have continued on to step three. At step two, the medical severity of the impairments are considered. 20 C.F.R. § 404.1520(a)(4)(ii). If it is found that the claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement" then the claimant will be found to be not disabled. Id. Any impairment or a combination of impairments which do not significantly limit the claimant's physical or mental ability to do basic work activities will not be found to be severe. Id. § 404.1520(c). The Plaintiff

does not specify which impairment or impairments she is challenging in regards to the ALJ's decision but states that "the claimant suffers from a number of impairments, at least one of these impairments renders her disabled" and thus "the claimant will have more than one venue on which to rely for her allegation that she is disabled." ECF No. 26, at 2. Thus, because of these assertions and Plaintiff's statement that "plaintiff during the crucial period suffered from asthma, diabetes, High Blood Pressure and a cerebral condition," the court will evaluate each of these alleged impairments. ECF No. 26, at 3.

Plaintiff first challenges the ALJ's decision by suggesting that the ALJ did not consider evidence within the record that indicates that the Plaintiff was disabled. ECF No. 26, at 6. While the Plaintiff's vague assertion does not state which evidence the ALJ did not consider, earlier in the Plaintiff's memorandum she discusses two pieces of evidence that were not directly addressed by the ALJ in his opinion. The ALJ did state that his decision was made only "[a]fter careful consideration of all the evidence." Tr. 13. Moreover, the ALJ stated that the relevant evidence in the record was very scarce as most of the evidence fell outside the period under consideration. Tr. 17; see Cruz-Guadalupe v. Comm'r of Soc. Sec., Civ. No. 08-1475(JAF), 2009 WL 2871154, at *3 (D.P.R. Sept. 1, 2009) (noting that evidence outside the relevant period was irrelevant); Mercado v. Colvin, Civ. No. 14-1428(CVR), 2016 WL 111426, at *4 (D.P.R. Jan. 11, 2016) (noting that the ALJ made a thorough examination of the record but the Court focused on the relevant record from the alleged onset date forward, and did not consider events that fell outside the alleged onset date).

The first piece of evidence is a medical report from Dr. Jamil Nawaz dated December 17, 2012. Tr. 292. The Plaintiff states that this report shows that Plaintiff "was a patient at the Morris Ave clinic in the Bronx, suffering from asthma intermittent type, hydrocephalus resulting from

post-traumatic intracranial bleed and needing a VP shunt that was placed in February, 1997 and checked periodically by neurology." ECF No. 26, at 4; see tr. 292. However, as the defendant points out, this medical report also states that Plaintiff was last seen on December 11, 2007, which is prior to the alleged onset date. See tr. 292. Furthermore, Plaintiff was seen on this date for "bronchitis and sinus catarrh and given necessary treatment," rather than any of Plaintiff's alleged impairments. Id. Additionally, prior to the list of medical ailments that Plaintiff cites, the medical report states that Plaintiff "was a patient" and then states that "[h]er medical problems were as follows" but does not provide any time frame for the illnesses listed. Id. The only other indication of a date is for the treatment for hydrocephalus, which was a VP shunt placed in February 1997, ten years prior to the alleged onset date. Id. Moreover, the only other impairment alleged here that is mentioned in this report is asthma, for the report does not mention the other two alleged impairments: diabetes or high blood pressure. Id. The report states that the asthma was "mild to moderate intermittent type: needing the use of Albuterol and Flovent inhalers as needed." Id. However, there is no indication that this would significantly limit Plaintiff's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).

The second piece of evidence is a letter from Dr. Michael Daras to Dr. Saeed. Plaintiff claims that this letter "states that [Plaintiff] was evaluated at the neurology and neurosurgery clinics of the hospital and had a CT [scan] of the head that showed marked hydrocephalus." ECF No. 26, at 4. However, the letter goes on to say that a doctor "from neurosurgery plans to shunt her on Wednesday on 2/5/97." Tr. 288. This is in line with the medical report from above. However, as the defendant points out, this letter is dated "2/3/97", which is ten years before the alleged onset of disability. Id. Thus, Plaintiff's claim that these two medical reports "were sufficient to establish the gravity of claimant's condition, and warrant medical determination that

8

the claimant suffered from a condition that was 'severe' within the meaning of the regulation" is incorrect. Both medical reports are prior to the alleged onset date and despite the Plaintiff's arguments to the contrary, there is other substantial evidence in the record to support the ALJ's decision.

The ALJ stated that "[e]vidence outside [the relevant] period is irrelevant in assessing claimant's allegations and resolving this claim." To qualify for Social Security disability benefits, a claimant does have the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. See 42 U.S.C. § 416(i); Alcaide v. Sec'y of Health & Human Servs., 601 F. Supp. 669, 672 (D.P.R. 1985); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether claimant is disabled. Nevertheless, "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, at *5 (1st Cir.1993) (unpublished) (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir.1982); Alcaide, 601 F. Supp. at 672–73). Thus, the ALJ should have still considered medical evidence after the date last insured if it shed light on whether Plaintiff's impairments were severe prior to the date last insured.

The medical evidence on record does contain medical evidence after December 31, 2012. Tr. 301–308, 87–94. There are four "Encounter Summary Reports" from Dr. Carmen Vargas from November 6, 2013, until August 18, 2014. On November 6, 2013, the medical notes state that the patient "mentions having hoarseness in her throat." The "problem list" from this visit includes

acute tonsillitis, acute pharyngitis, "Type II (non-insulin dependent type) or unspecified type diabetes mellitus without mention of complication, not stated as uncontrolled", and hypertension. Tr. 89–91. On January 16, 2014, the medical report states that "patient mentions feeling discomfort in the throat. The patient comes for medications that she uses daily." Tr. 92. The summary report for May 9, 2014, states that "patient comes for prescriptions for the medication she uses. In addition, the patient has a sore throat, which occurs because she is a singer." Tr. 93. On August 18, 2014, the medical notes state that the patient "mentions having a burning sensation in the throat, as well as congestion. The patient says that she is taking blood pressure medication at night because it makes her sleepy." Tr. 87. There is also a "S.O.A.P. PROGRESS NOTES" report attached to this same exhibit with entries for September 6, 2013, and October 18, 2013, but they are written in hand and illegible. Tr. 95. While these notes show that after the relevant period Plaintiff was often seen for a sore throat, they do not support the argument that the alleged impairments were severe during the relevant period.

Moreover, there is additional evidence in the record but it pre-dates the alleged onset date by more than ten years. Tr. 286–91. Although some of this evidence is illegible, it deals with a VP shunt placement for hydrocephalus. Tr. 286. A follow-up visit report on February 25, 1997, gives a positive review of the VP shunt stating that "[Plaintiff] feels happy and all the wounds are healed nicely and clean." Tr. 286. However, an additional handwritten report on August 3, 1998, states that Plaintiff was once again seen for hydrocephalus and was "referred to neurosurgery for further evaluation." Tr. 287. There are no other reports during this time frame. Importantly, Plaintiff reported working as an Educational Assistant from December 1999 until December 2007. Tr. 67, 218, 225. Thus, Plaintiff worked for a full eight years following these reports in regards to her hydrocephalus and there is no medical evidence in the record to show that the hydrocephalus

10

condition got worse during this time period. Therefore, this medical evidence that pre-dates the alleged onset date by more than ten years does not support Plaintiff's argument that she has a severe impairment.

The Plaintiff further argues that the ALJ based his conclusion "on his own medical opinion where he has not been qualified as a medical expert, and where no other evidence supports his conclusion that the severe illnesses were just not 'severe enough.'" ECF No. 26, at 6. However, the ALJ did not base his conclusion on his own medical opinion, but on that of Dr. Anaya, Dr. Nieves, and Dr. Meléndez. First, the ALJ gave great weight to the opinion of Dr. Anaya, the medical expert called by the Social Security Administration to testify at the hearing. Tr. 17. At the hearing, Dr. Anaya testified that after reviewing all the exhibits, that there was not "evidence to say that there's a condition severity," nor that there was a medically determinable impairment during the relevant time period. Tr. 25. Second, the ALJ gave great weight to the DDS medical consultants, Dr. Meléndez and Dr. Nieves. Dr. Meléndez performed the initial disability determination explanation and Dr. Nieves performed the disability determination explanation on reconsideration. Tr. 96–102, 104–112. Both Dr. Meléndez and Dr. Nieves concluded that Plaintiff did not have a severe impairment or a combination of impairments that were severe. Tr. 100, 110. Thus, the Plaintiff was determined to be not disabled at step two. Tr. 101, 111.

Conclusions as to whether a claimant is "disabled" and related legal conclusions are administrative decisions that are to be made by the Commissioner, not by medical personnel. 20 C.F.R. § 404.1527(e); see Rivera v. Comm'r of Soc. Sec., Civ. No. 08–2281(JAF), 2010 WL 132329, at *5 (D.P.R. Jan. 8, 2010) ("[W]hile [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (internal citation

omitted) (citing Frank v. Banhart, 326 F.3d 618, 620 (5th Cir. 2003)); López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) ("The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing Courts.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). Thus, an ALJ cannot simply accept medical conclusions as true but must do a separate legal analysis. However, as the ALJ stated, there are only a few pages of medical evidence in the record for the relevant period. These are three pages of S.O.A.P. Progress Notes provided by a Dr. Vargas. Tr. 295–98. These notes are handwritten and in Spanish; however, there is a typed translation for some of the notes provided in the record. Tr. 83–86. The ALJ's analysis that "[a]t most, [the] evidence shows notations for high blood pressure and diabetes" is supported because the notes do not indicate a severe impairment for any of the alleged impairments but do at one point list "HBP, DM." Tr. 84. This is most likely the reason the ALJ stated that there were notations for "high blood pressure" (HBP) and "diabetes [mellitus]" (DM). Thus, the medical records for the relevant period do not support the Plaintiff's argument that she had a severe impairment of hydrocephalus, high blood pressure, diabetes, asthma, or a combination of the impairments.[4]

Therefore, there is substantial evidence to support the ALJ's conclusion that none of the alleged impairments were severe during the relevant period. Moreover, the evidence in regards to hydrocephalus is from ten years prior to the alleged onset date. Additionally, Plaintiff worked for a full eight years after the medical evidence in regards to the hydrocephalus and there is no medical evidence in the record to indicate that the hydrocephalus grew worse. Lastly, the medical evidence in the record after the relevant period does not indicate that Plaintiff's alleged impairments of

---

[4] Although there are a few other pages of the record that fall within the relevant period of time (e.g., tr. 52–53), Plaintiff's memorandum does not specifically refer to those pages, but rather rests on a generic assertion that the ALJ's decision is not based on substantial evidence.

12

hydrocephalus, asthma, high blood pressure, and diabetes reached disabling severity prior to the expiration of the relevant period. Since Plaintiff was found to be not disabled at step two in the evaluation process, the analysis rightfully stopped there. See 20 C.F.R. § 404.1520(a)(4). Therefore, there is substantial evidence in the record taken as a whole to support the decision of the ALJ in denying disability.

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of November, 2017.

                                                    s/Marcos E. López
                                                    U.S. Magistrate Judge